# In the United States Court of Federal Claims

JO'VON MONTELL HOLLOWELL,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 24-711

Filed: June 3, 2025

## MEMORANDUM & ORDER

Plaintiff Jo'Von Montell Hollowell, who is incarcerated and proceeding *pro se*, filed this action against the United States seeking $80 million, release from federal detention, and a new trial for his previous criminal conviction. Plaintiff alleges that he was the target of a conspiracy between employees of the Bureau of Alcohol, Tobacco, and Firearms, and the judges and staff of federal courts in Georgia. Plaintiff contends that these individuals acted pursuant to a "treasonous agenda" of the American Bar Association—which, he contends, controls the federal Government—to hold Plaintiff captive and force him into "perpetual slavery." Plaintiff's claims are simply collateral attacks against his criminal conviction. It is well-established that this Court lacks jurisdiction to hear challenges to the decisions of other federal courts and over criminal matters. Accordingly, this Court must grant Defendant's Motion to Dismiss and dismiss Plaintiff's Complaint.

# BACKGROUND

## I.      Procedural Background

Plaintiff filed his Complaint on May 2, 2024, along with an attached 39-page "Memorandum of Law."  ECF No. 1 (Complaint or Compl.); ECF No. 1-1 (Compl. Mem.).  On June 28, 2024, the Clerk of Court received a defective Motion for Summary Judgment from Plaintiff, which it filed on July 8, 2024 by leave of the Court.[1]  ECF No. 9 (directing Clerk of Court to docket filing); ECF No. 10 (Motion for Summary Judgment).  On July 3, 2024, Defendant filed its Motion to Dismiss, contending that this Court lacks jurisdiction under Rule 12(b)(1) and that Plaintiff failed to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Rules of the United States Court of the Federal Claims (Rule(s)).  ECF No. 8 (Motion).  Due to the threshold jurisdictional issues raised by Defendant's Motion to Dismiss, the Court subsequently stayed Plaintiff's Motion for Summary Judgment and directed Plaintiff to respond to the Motion to Dismiss by October 31, 2024.  ECF No. 14.  On October 29, 2024, the Clerk of Court received Plaintiff's defective Response to Defendant's Motion to Dismiss, which it filed on October 30, 2024 by leave of the Court.  ECF Nos. 16; ECF No. 17 (Response or Resp.).  Defendant subsequently filed its Reply in support of its Motion to Dismiss.  ECF No. 18.

## II.      Factual Background

Plaintiff purports to be a "Cherokee National" and a member of the "non-B.I.A. Tsalagi Goldfalcon Thunderbird Clan."  Compl. ¶ 1.  In 2022, a jury in the United States District Court for the Northern District of Georgia convicted Plaintiff of dealing firearms without a license and two counts of making false statements to a federally licensed firearms dealer.  *United States v.*

---

[1] Also on July 8, 2024, Plaintiff filed a document filing entitled "Notice: Conditional Acceptance." ECF No. 9 (directing Clerk of Court to docket filing); ECF No. 11 (Notice).

*Hollowell*, No. 22-12905, 2023 WL 5950500, at *1 (11th Cir. Sept. 13, 2023) (*Hollowell I*), *cert. denied sub nom. Hollowell v. United States*, 144 S. Ct. 707 (2024).  Plaintiff was sentenced to 46 months in prison followed by three years of supervised release.  *Id.*  The Eleventh Circuit affirmed Plaintiff's conviction, and Plaintiff is currently serving his sentence.  *Id.* at *3.  In addition to his appeal, Plaintiff filed multiple, separate lawsuits challenging his conviction—all of which were unsuccessful.  *See, e.g.*, *Hollowell v. Williams*, No. 22-4534, 2023 WL 11959434 (N.D. Ga. Apr. 17, 2023) (*Hollowell II*); *Hollowell v. Barrett*, No. 23-2792, 2023 WL 11959438 (N.D. Ga. Aug. 1, 2023); *Hollowell v. Dist. Ct. of N. Ga.*, No. 23-3848, 2023 WL 11959667 (N.D. Ga. Oct. 4, 2023); *Hollowell v. United States*, No. 21-0239, 2024 WL 4867128 (N.D. Ga. Nov. 22, 2024).

Plaintiff's present claims relate to this arrest and conviction.  As detailed in the Complaint, Plaintiff's troubles began on April 20, 2020, when officers of the Bureau of Alcohol, Tobacco, Firearms and Explosives Agency (ATF) entered and searched Plaintiff's home and detained him, purportedly without probable cause or a warrant.  Compl. ¶¶ 1–2.  Plaintiff claims the agents menaced him and his ex-girlfriend and took eleven of his guns and his phone without just compensation. *Id.* ¶ 2.  Next, he claims that on August 11, 2021, "the corporate security guards of the [ATF] . . . willingly kidnapped" and took Plaintiff to the United States Court of Northern Georgia (District Court), which Plaintiff claims is "a corporate-agency of the UNITED STATES FEDERAL GOVERNMENT INC.," where he was "subject to forceful booking procedures, and held captive overnight." *Id.* ¶ 3.  Plaintiff claims that an "executive administrator under guise of a 'federal magistrate' forced [Plaintiff] into a unilateral contract, under guise of a 'federal indictment.'" *Id.* ¶ 4 (emphasis omitted).

After his arraignment, Plaintiff claims that the ATF, the District Court, and their employees, "engaged in a seditious conspiracy to overthrow the Constitution by monopolizing against

[Plaintiff]" to enforce what Plaintiff describes as illegal tax laws "under guise of 'commercial crimes' enforced by 'maritime statutes' and 'corporate rules.'" *Id.* ¶ 5 (emphasis omitted). Plaintiff claims that these parties forced Plaintiff to have a court appointed lawyer—a member of the American Bar Association (ABA)—and conspired to convict him, even though, he contends, as a Cherokee National he was purportedly not subject to the District Court's jurisdiction. *Id.* ¶¶ 6–7; Compl. Mem. at 5–10.[2]  According to Plaintiff, the conspiracy went even higher: he further contends that the Honorable Gerard Bard Tjoflat, Kevin C. Newsom, and Britt C. Grant, each a judge of the United States Court of Appeals for the Eleventh Circuit, also engaged in the "monopolistic conspiracy, committing treason" by affirming Plaintiff's conviction and purportedly not publishing the opinion. Compl ¶ 11. Plaintiff alleges that these individuals worked pursuant to the "treasonous agenda" of the ABA, which Plaintiff alleges controls the Federal Government, to hold Plaintiff captive and force him into "perpetual slavery." *Id.* ¶¶ 13, 16.

Plaintiff lodges three counts in his Complaint related to these allegations. *First*, Plaintiff brings a claim for a violation of the Sherman Antitrust Act. *Id.* ¶¶ 14–16. Plaintiff alleges that Defendants—through "monopolistic control" over the market supply of weapons and through the ABA's "monopolistic control" over the federal Government—limited his ability to keep and bear arms. *Id.* ¶ 16. Further, he claims that Defendants "engaged in a seditious conspiracy to overthrow the Constitution," forced him into a unilateral contract, and violated numerous provisions of the Constitution and various statutes and Indian treaties. *Id.* ¶ 15. *Second*, Plaintiff brings claims of false imprisonment and a taking of his property without just compensation. *Id.* ¶¶ 17–20. *Third*, Plaintiff claims that his current imprisonment violates the Thirteenth Amendment. *Id.* ¶¶ 21–23.

---

[2] Citations throughout this Memorandum and Order reference the ECF-assigned page numbers, which do not always correspond to the pagination within the document.

Throughout his Complaint, Plaintiff reiterates that his arrest and conviction were unlawful. *See, e.g.*, *id.* ¶ 2 (asserting that Plaintiff's arrest violated his constitutional rights); *id.* ¶ 11 (Plaintiff characterizing his conviction as "lawless"); *id.* ¶ 16 (claiming that Plaintiff was "depriv[ed] of [his] right to a fair, unbiased trial"). As relief, Plaintiff seeks a judgment from this Court ordering the United States to pay $80 million, release from federal detention, and a new trial by jury in his criminal matter. *Id.* at 8.

In his Response to Defendant's Motion to Dismiss, Plaintiff recharacterizes his Sherman Antitrust Act claim as a "breach of trust in mutually agreed Treaties." Resp. at 3. He alleges that the United States breached its trust obligation under the Delaware Treaty of 1778, 7 Stat. 13 (Treaty with the Delawares) and the Treaty with the Comanche, Etc., of 1835, 7 Stat. 474 (Treaty with the Comanche)[3] when it subjected Plaintiff to an unlawful arrest and otherwise violated his rights. *Id.* at 2–3 (first citing Treaty with the Delawares; and then citing Treaty with the Comanche). He also requests that this Court "utilize its power" under the Administrative Procedure Act (APA) to compel the "lower court" to grant him habeas relief, hold that the involved agencies' actions were unlawful, release him from prison "and into the hands of [his] Nation," and give him a certificate of innocence. *Id.* at 4.

---

[3] Plaintiff references the Treaty with the Comanche as the Treaty of Camp Holmes of 1835. Resp. at 1, 3. These titles both reference the same treaty. The Treaty with the Comanche itself states that it was executed at Camp Holmes and another judge of this court has referred to the treaty using both names. *See* Treaty with the Comanche; *Edwards v. United States*, No. 15-580C, 2015 WL 6560547, at *2, 3 (Fed. Cl. Oct. 29, 2015). Moreover, the provisions Plaintiff attributes to the Treaty of Camp Holmes are identical to those contained in the Treaty with the Comanche. *Compare* Resp. at 3 (citing Treaty of Camp Holmes, Arts. III & VII), *with* Treaty with the Comanche, Arts. III & VII.

## APPLICABLE LEGAL STANDARDS

### I.  Subject Matter Jurisdiction

It is well-established that this Court is not a forum for all federal claims; rather it is one of limited jurisdiction.  *See Marcum LLP v. United States*, 753 F.3d 1380, 1382 (Fed. Cir. 2014). Generally, the Tucker Act defines this Court's jurisdiction.  *RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009) (citing 28 U.S.C. § 1491(a)(1)).  The Tucker Act vests this Court with jurisdiction over any suit against the United States for money damages "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  The Tucker Act does not create any enforceable right against the United States on its own nor does it grant jurisdiction for "every claim invoking the Constitution, a federal statute, or a regulation."  *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 322 (2020) (quoting *United States v. Mitchell*, 463 U.S. 206, 216 (1983) (*Mitchell II*)).  To invoke jurisdiction under the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages."  *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part).

It is also axiomatic that the United States Court of Federal Claims lacks jurisdiction to review the decisions of other federal courts. *Jones v. United States*, 440 F. App'x 916, 918 (Fed. Cir. 2011).  Indeed, "[p]ermitting parties aggrieved by the decisions of Article III tribunals to challenge the merits of those decisions in the Court of Federal Claims would circumvent the statutorily defined appellate process and severely undercut the orderly resolution of claims." *Shinnecock Indian Nation v. United States*, 782 F.3d 1345, 1353 (Fed. Cir. 2015) (citing 28 U.S.C. § 1291).

While this Court generally has "jurisdiction over express and implied-in-fact contract claims against the United States," it must dismiss a claim for lack of jurisdiction where a plaintiff fails to plausibly allege such a contract.  *Stephens v. United States*, 165 Fed. Cl. 341, 347 (2023) (quoting *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990)); *see also Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997) ("To show jurisdiction in the Court of Federal Claims, [a plaintiff] must show that either an express or implied-in-fact contract underlies its claim."); *Starrett v. United States*, No. 22-1555, 2023 WL 152827, at *4 (Fed. Cir. Jan. 11, 2023) ("[B]ecause [plaintiff] does not plausibly allege the existence of an express or implied contract with the United States, the Claims Court lacked subject-matter jurisdiction over the case and correctly dismissed [plaintiff's] complaint.").

## II.     Interpretation of Treaties with Indian Tribes

When interpreting Indian treaties, courts "give effect to the terms as the Indians themselves would have understood them" and construe the treaties "liberally in favor of the Indians, with ambiguous provisions interpreted for their benefit."  *Minnesota. v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 196 (1999); *Oneida Cnty., N.Y. v. Oneida Indian Nation of N.Y. State*, 470 U.S. 226, 247 (1985) (citations omitted).  However, a court must "honor any unambiguous language in the treaty" and will not "var[y] its terms to meet alleged injustices."  *Jones v. United States*, 846 F.3d 1343, 1352 (Fed. Cir. 2017); *Nw. Bands of Shoshone Indians v. United States*, 324 U.S. 335, 353 (1945).

## III.    Rule 12 Motions

### A.      Rules 12(b)(1) and 12(h)(3)

When resolving a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, this Court "accepts as true all uncontroverted factual allegations in the complaint and construes

7

them in the light most favorable to the plaintiff." *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014); *see also Banks v. United States*, 741 F.3d 1268, 1277 (Fed. Cir. 2014). If subject matter jurisdiction is disputed, "a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings." *N. Hartland, L.L.C. v. United States*, 309 F. App'x 389, 392 (Fed. Cir. 2009) (quoting *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993)). While this Court holds *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," *pro se* plaintiffs must still prove by a preponderance of the evidence that this Court has subject matter jurisdiction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Roman v. United States*, 61 F.4th 1366, 1370 (Fed. Cir. 2023); *Ali-Bey v. United States*, No. 24-1629, 2025 WL 855751, at *2 (Fed. Cir. Mar. 19, 2025). To that end, regardless of a plaintiff's *pro se* status, this Court must dismiss claims outside its limited subject matter jurisdiction. *See* Rule 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

### B.  Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss should be granted if the facts asserted do not entitle the plaintiff to a legal remedy. *Welty v. United States*, 926 F.3d 1319, 1323 (Fed. Cir. 2019). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff also must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*

8

(quoting *Twombly*, 550 U.S. at 555, 557) (second alteration in original) (internal citations omitted);

*see Al Shara v. United States*, No. 24-1853, 2025 WL 1322720, at *2 (Fed. Cir. May 7, 2025)

(quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

As explained further below, this Court lacks subject matter jurisdiction (i) to review

Plaintiff's collateral attack on his criminal conviction, and (ii) over Plaintiff's statutory,

constitutional, tort, breach of contract, and breach of trust claims.[4] Additionally, Plaintiff's takings

---

[4] Even if this Court could exercise jurisdiction, Plaintiff's claims must still be dismissed as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i). Plaintiff is proceeding *in forma pauperis* (IFP) here. ECF No. 13. Section 1915 mandates that a "court shall dismiss the case at any time" if the action to be filed IFP "is frivolous or malicious." 28 U.S.C. § 1915(e)(2)(B)(i). This is true even if the court only discovers that a case is frivolous after the IFP motion has been granted. *Manning v. United States*, 123 Fed. Cl. 679, 684 n.8 (2015). Section 1915(e)(2)(B) permits the Court "to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Dismissal "is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible," or "if the facts alleged are 'clearly baseless,' a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'" *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992) (citations omitted) (quoting *Neitzke*, 490 U.S. at 327−28); *Dozier-Carter v. United States*, No. 10-5141, 2010 WL 4569990, at *2 (Fed. Cir. Nov. 5, 2010). Plaintiff's allegations meet the standard for dismissal under Section 1915(e)(2)(B)(i). Plaintiff alleges that he was the target of a conspiracy between employees of the ATF and the judges and staff of federal courts in Georgia, acting pursuant to a "treasonous agenda" of the ABA—which Plaintiff alleges controls the federal government—to hold Plaintiff captive and force him into "perpetual slavery." *See generally* Compl. Such an accusation is "clearly baseless" on its face. *Denton*, 504 U.S. at 32–33.

Further, Plaintiff's filings advance typical sovereign citizen arguments. While the arguments sovereign citizens make are numerous, some common ones claim that: (i) the ABA controls the United States Government, (ii) the individual is not subject to the laws of the United States as they are purportedly a non-United States citizen, and (iii) that the United States Government is a corporation. *See Cargill v. United States*, No. 25-175, 2025 WL 1218231, at *5 (Fed. Cl. Apr. 28, 2025); *Miles v. United States*, No. 24-cv-1932, 2025 WL 28368, at *3 n.5 (Fed. Cl. Jan. 3, 2025); *Sharp v. Am. Bar Ass'n*, No. 22-0105, 2022 WL 3586264, at *2 (D.N.M. Aug. 22, 2022). Plaintiff argues all three at length. *See* Compl. Mem. at 17–20, 28–30, 32–39. Judges have uniformly found sovereign citizen theories to be invalid and frivolous. *See, e.g.*, *Walby v. United States*, 957 F.3d 1295, 1302–03 (Fed. Cir. 2020) (affirming Court of Federal Claims' *sua sponte* dismissal of "patently frivolous" suit brought by sovereign citizen asserting non-citizenship); *United States v. Sterling*, 738 F.3d 228, 233 n.1 (11th Cir. 2013) (noting that courts routinely reject sovereign

claim fails to plausibly state a basis for relief. Accordingly, Defendant's Motion to Dismiss is granted.

## I.    The Court Must Dismiss Plaintiff's Collateral Attack on his Criminal Conviction for Lack of Jurisdiction.

Plaintiff's primary legal challenge in his Complaint is, in essence, a collateral attack on his prior conviction. While Plaintiff appears to advance a litany of arguments, it is evident that, in substance, Plaintiff primarily seeks to challenge his criminal conviction. *See generally* Compl. For example, Plaintiff complains that the District Court judge acted "with a blatant disregard for Constitutional law, Acts of Congress, SCOTUS precedents, and our Trust and treaty agreements" in presiding over his trial, *id.* ¶ 7, the Eleventh Circuit "maliciously substituted their own 11th Circuit rules and practices . . . by affirming the lawless conviction of the District Court," *id.* ¶ 11, and the prosecutors from his district court proceeding "monopoliz[ed] against [him] in a 'kangaroo court' to extort, oppress, rob, and kidnap an innocent man," *id.* ¶ 8 (emphasis omitted). Further, Plaintiff's Memorandum of Law spends numerous pages explaining, among other things, why Plaintiff believes the District Court lacked jurisdiction over him on accord of his alleged Indian status and why Plaintiff's conviction is allegedly unconstitutional under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). Compl. Mem. at 5–11, 23–25.

This is not the appropriate forum for Plaintiff to seek reversal of his conviction or redress any perceived wrongs associated with Plaintiff's prior criminal proceedings; indeed, it is well-established that this Court "has no jurisdiction to review the validity of a criminal conviction in a federal district court." *Myles v. United States*, 152 Fed. Cl. 448, 452 (2021), *aff'd*, No. 21-1758, 2022 WL 126911 (Fed. Cir. Jan. 13, 2022); *see also Joshua v. United States*, 17 F.3d 378, 380 (Fed.

---

citizen legal theories as "frivolous"). Accordingly, even if jurisdiction were proper here (which, it is not), Plaintiff's Complaint would nevertheless be dismissed as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i).

Cir. 1994) ("[T]he Court of Federal Claims does not have jurisdiction to review the decisions of district courts or the clerks of district courts relating to proceedings before those courts."); *Jones*, 440 F. App'x at 918 ("It is axiomatic that the Court of Federal Claims lacks jurisdiction to review the decisions of state or federal courts."); *Sanganza v. United States*, 164 Fed. Cl. 188, 198–99 (2023) (holding that this Court lacks jurisdiction to "insert itself in the criminal proceedings before the district court"). Further, the Court of Federal Claims lacks "jurisdiction over criminal matters generally." *Jones*, 440 F. App'x at 918; *Sanders v. United States*, 252 F.3d 1329, 1335–36 (Fed. Cir. 2001) (quoting *Kania v. United States*, 650 F.2d 264, 268–69 (Ct. Cl. 1981)). As Plaintiff's claims principally challenge his conviction and aspects of the underlying criminal proceedings, this Court lacks jurisdiction to consider such claims.[5] *See Joshua*, 17 F.3d at 380.

## II.    This Court Lacks Jurisdiction Over Plaintiff's Statutory, Constitutional, Tort, Breach of Contract, and Breach of Trust Claims.

For the reasons explained below, even if the Court did not construe Plaintiff's claims as a collateral attack on his conviction, this Court would still lack jurisdiction over each of Plaintiff's statutory, constitutional, tort, breach of contract, and breach of trust claims.

---

[5] Plaintiff also seeks his immediate release from prison and a new trial. Compl. at 8. Beyond its inability to hear collateral attacks on criminal convictions, this Court is unable to grant such relief because "[t]he only judgments which the Court of Claims is authorized to render against the government are judgments for money found due from the government to the petitioner," and thus such claims must be dismissed pursuant to Rule 12(b)(1). *United States v. King*, 395 U.S. 1, 3 (1969); *see also In re Francis,* No. 22-151, 2022 WL 2311265, at *1 (Fed. Cir. June 28, 2022) (holding that the Court of Federal Claims lacks jurisdiction to order the release of a person from prison); *Brown v. United States*, 105 Fed. 621, 623–24 (Fed. Cir. 1997).

**A.      This Court Lacks Jurisdiction Over Plaintiff's Tort Claims.**

Count two of Plaintiff's Complaint alleges that the Government subjected Plaintiff to "false imprisonment" when he was initially arrested and then again when he was sentenced to prison.[6] Compl. ¶¶ 18–20. However, a claim for false imprisonment sounds in tort, and it is well settled that this Court lacks jurisdiction over tort claims.  28 U.S.C. § 1491(a)(1) (vesting this Court with jurisdiction over claims against the United States for money damages "in cases *not sounding in tort*") (emphasis added); *Jackson v. United States*, 612 F. App'x 997, 998 (Fed. Cir. 2015) ("Because a claim of false imprisonment sounds in tort, it falls outside the court's jurisdictional reach."); *see also Souders v. S.C. Pub. Serv. Auth.*, 497 F.3d 1303, 1307 (Fed. Cir. 2007) ("[T]ort claims are clearly outside the limited jurisdiction of the Court of Federal Claims . . . ."). Accordingly, this Court lacks jurisdiction over Plaintiff's false imprisonment claim.[7]

**B.      This Court Lacks Jurisdiction Over Plaintiff's Constitutional Claims.**

Plaintiff asserts that the Government's actions during Plaintiff's criminal proceeding violated an array of constitutional provisions.  However, "[i]f plaintiff had valid constitutional defenses to his convictions on criminal charges, he should have asserted them on appeal in the

---

[6] Plaintiff also asserts that he was kidnapped.  Compl. ¶ 20.  To the extent this is a separate claim sounding in criminal law, this Court cannot hear the claim as it lacks "jurisdiction over criminal matters generally."  *Jones*, 440 F. App'x at 918.

[7] To the extent Plaintiff's repeated assertions of innocence are intended to state a claim for unjust conviction under 28 U.S.C. § 1495, he has failed to satisfy the statutory prerequisites set forth in 28 U.S.C. § 2513.  Indeed, Plaintiff neither pleads that his conviction has been "reversed or set aside on the ground that he is not guilty" nor provides a "certificate of innocence."  28 U.S.C. § 2513(a)(1), (b); *see Jackson v. United States*, 162 Fed. Cl. 282, 296–98 (2022).  In fact, Plaintiff specifically asks this Court to direct the District Court to issue a certificate of innocence.  Resp. at 4.  Thus, Plaintiff plainly fails to meet the requirements of 28 U.S.C. § 2513 and to the extent Plaintiff brought a claim for unjust conviction, it is dismissed under Rule 12(b)(1) for lack of jurisdiction and alternately dismissed under 12(b)(6) for failure to state a claim.  *See Jackson*, 162 Fed. Cl. at 296–300 (collecting cases).

proper court." *Carter v. United States*, 228 Ct. Cl. 898, 900 (1981). Other than Plaintiff's takings claim, which is addressed further below, *see infra* Section III, none of Plaintiff's constitutional claims are based upon money-mandating provisions, and thus this Court lacks jurisdiction over such claims. *See Kenyon v. United States*, 683 F. App'x 945, 948 (Fed. Cir. 2017).

Specifically, Plaintiff alleges violations of most of the rights guaranteed by the Second, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, Thirteenth, and Fourteenth Amendments. Compl. ¶¶ 1, 2, 15, 18, 22. However, it is well-established that this Court "lacks jurisdiction over claims based on the Fourth, Sixth, and Eighth Amendments, as well as the Due Process clauses of the Fifth and Fourteenth Amendments because they are not 'money-mandating.'" *Kenyon*, 683 F. App'x at 948 (first citing *Dupre v. United States*, 229 Ct. Cl. 706, 706 (1981) ("[T]he [F]ourth and [S]ixth [A]mendments do not in themselves obligate the United States to pay money damages; and, therefore, we have no jurisdiction over such claims."); then citing *Trafny v. United States*, 503 F.3d 1339, 1340 (Fed. Cir. 2007) ("The Court of Federal Claims does not have jurisdiction over claims arising under the Eighth Amendment . . . ."); and then citing *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (The "Due Process Clauses of the Fifth and Fourteenth Amendments" are not "a sufficient basis for jurisdiction")). Additionally, the Court lacks jurisdiction over claims based on the Second, Ninth, and Tenth Amendments. *Patterson v. United States*, 218 F. App'x 987, 988 (Fed. Cir. 2007) ("[W]e discern no error in the trial court's determination that a claim for monetary damages against the United States cannot be based on the . . . Ninth[] or Tenth Amendments."); *Vuolo v. United States*, No. 06-5136, 2006 WL 3913417, at *1 (Fed. Cir. Dec. 29, 2006) ("The Court of Federal Claims correctly held that it lacked jurisdiction over [Plaintiff's] allegations concerning violations of the . . . Second . . . and Ninth Amendments because these amendments do not mandate the payment of money."); *Ogden v. United States*, 61 Fed. Cl. 44, 47

(2004) (holding that claims based on the Ninth and Tenth Amendments are outside of this Court's jurisdiction); *Jordan v. United States*, 128 Fed. Cl. 46, 53 (2016) (holding this Court lacks jurisdiction over Second Amendment claims because "the Second Amendment is not money-mandating"). Lastly, Plaintiff alleges that he is being forced into involuntary servitude in violation of the Thirteenth Amendment. Compl. ¶¶ 21–23. But "[i]t is well-established that the Thirteenth Amendment does not mandate the payment of money from the United States" and accordingly this Court lacks jurisdiction over such claims. *Starnes v. United States*, 162 Fed. Cl. 468, 474 (2022); *Ali-Bey*, 2025 WL 855751, at *3 (holding that this Court lacks jurisdiction over Thirteenth Amendment claims); *Humphrey v. United States*, 60 F. App'x 292, 295 (Fed. Cir. 2003) (same).

The other portions of the Constitution identified by Plaintiff also "lack any reference to an entitlement to money damages for their violation." *Haddad v. United States*, No. 15-1075C, 2016 WL 5660266, at *4 (Fed. Cl. Sept. 30, 2016). Plaintiff cites the Suspension clause, which places restrictions on the suspension of habeas corpus proceedings, and the Supremacy Clause, which states the foundational principle that, in general, federal law takes precedence over conflicting state law. Compl. ¶¶ 13, 15 (citing U.S. CONST., art. I, § 9, cl. 2; *id.*, art. VI, cl. 2). Neither are money-mandating. *Trevino v. United States*, 557 F. App'x 995, 998 (Fed. Cir. 2014) (holding the Supremacy Clause is not money-mandating); *Haddad*, 2016 WL 5660266, at *4 (finding that the Supremacy and Suspension Clauses are not money-mandating); *see Brown*, 105 F.3d at 623 ("[T]he jurisdiction of the Court of Federal Claims is limited to cases in which the Constitution or a federal statute requires the payment of money damages as compensation for their violation."); *United States v. Connolly*, 716 F.2d 882, 887 (Fed. Cir. 1983) (en banc) (concluding that a constitutional provision is not money-mandating where it "neither explicitly nor implicitly obligate[s] the federal government to pay damages"). A third cited provision mandates that

Congress must assemble at least once a year, and a fourth provision delineates the "judicial power" of the United States, which is vested in the Supreme Court.  Compl. ¶ 15 (citing U.S. CONST., art. I, § 4, cl. 2; *id.*, art. III, § 2).  These provisions, too, lack any reference to an entitlement to money damages, and accordingly this Court lacks jurisdiction over such a claim.  *See Brown*, 105 F.3d at 623; *Connolly*, 716 F.2d at 887.  Finally, Plaintiff alleges that because he is "forced to buy food from contracted vendors" in prison, he is an Indian unlawfully taxed in violation of Article I, Section 2, Clause 3 of the Constitution.  Compl. ¶¶ 12, 15; *see* U.S. CONST. art. I, § 2, cl. 3 (noting that taxes shall be apportioned based on a state's representative populations, excluding the number of "Indians not taxed" in a particular state).  Like the other provisions Plaintiff cites, nothing in Article I, Section 2, Clause 3 can be read to "expressly create[] a substantive right enforceable against the federal government for money damages."  *LeBlanc*, 50 F.3d at 1028 (citing *United States v. Testan*, 424 U.S. 392, 398 (1976)).  Because none of the constitutional provisions discussed above are a money-mandating source of law, Plaintiff's constitutional claims must be dismissed.  *See Brown*, 105 F.3d at 623.

### C.    This Court Lacks Jurisdiction Over Plaintiff's Statutory Claims.

Plaintiff invokes several statutory provisions, but—like the constitutional provisions he cites—none qualify as money-mandating as they cannot be "fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties they impose."  *Mitchell II*, 463 U.S. at 219; *see* Compl. ¶¶ 10, 15–16.

To begin, Plaintiff alleges violations of Sections 1 and 2 of the Sherman Antitrust Act, claiming that the United States has monopolistic control over the market supply of weapons and that Defendants "monopolized against" Plaintiff through the criminal trial and conviction.[8]

---

[8] Plaintiff also contends that Defendants engaged in a "seditious conspiracy to overthrow the constitution."  Compl. ¶ 15.  To the extent that Plaintiff is alleging violations of 18 U.S.C. § 2384

Compl. ¶¶ 15–16.   However, as Plaintiff acknowledges in his Response, this Court "lacks jurisdiction over matters arising from the Sherman Antitrust Act because such actions are committed to the district courts by the statute's own terms." *Flippin v. United States*, 146 Fed. Cl. 179, 184–85 (2019) (citing 15 U.S.C. § 4); Resp. at 3 ("[I] may come to hereby cede to the fact that this court may not have jurisdiction to adjudicate any claim brought forth under the Sherman Anti-Trust Act.").   Plaintiff also alleges that the clerk of court for the District Court "willfully ignored 3 valid F.O.I.A (Freedom of [I]nformation [A]ct) requests."  Compl. ¶ 10.  This Court, however, does not have jurisdiction over claimed FOIA violations as FOIA does not contain a money-mandating provision.  5 U.S.C. § 552; *Frazier v. United States*, 683 F. App'x 938, 940 (Fed. Cir. 2017).

Plaintiff also lists, without further explanation, a variety of congressional acts and concurring resolutions.  *See* Compl. ¶ 15.  Specifically, Plaintiff cites two concurring resolutions that simply acknowledge the important relationship between the United States and Indian tribes (H.R. Con. Res. 331, 100th Cong. (1988); S. Con. Res. 76, 100th Cong. (1988)), an act that requires federal agencies to communicate with the public using clear language (Plain Writing Act of 2010, Pub. L. 111–274, 124 Stat. 2861), an act that concerns the regulation of Indian tribal governments (Indian Civil Rights Act of 1968, 25 U.S.C. §§ 1301 *et seq.*), and an act that provides assistance for the development of tribal justice systems (Indian Tribal Justice Support Act of 1993, 25 U.S.C. §§ 3601 *et seq.*).[9]   None of these sources are money-mandating.  *See United States v. White*

---

("Seditious Conspiracy"), which is a provision of the federal criminal code, this Court "has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code." *Joshua,* 17 F.3d at 380.

[9] Section 3613 of the Indian Tribal Justice Support Act authorizes the Secretary of the Interior to enter into grants, contracts, and agreements with Indian tribes for the purpose of improving tribal justice systems.  25 U.S.C. §§ 3602, 3613.  Plaintiff does not identify any provision that mandates

*Mountain Apache Tribe*, 537 U.S. 465, 473 (2003) (holding that a statute is only money-mandating when it is "reasonably amenable to the reading that it mandates a right of recovery in damages"); *McCoy v. United States*, No. 05-120L, 2005 WL 6124815, at *3 (Fed. Cl. June 29, 2005) (holding that the Indian Civil Rights Act lacks any money-mandating provisions).    Further, a plaintiff cannot obtain jurisdiction by simply listing numerous congressional acts in the hopes that one of the many statutes encompassed within those acts is money-mandating; instead he "must demonstrate that the source of substantive law he relies upon 'can fairly be interpreted as'" money-mandating. *Mitchell II*, 463 U.S. at 216–17 (quoting *Testan*, 424 U.S. at 400); *see Visconi v. United States*, 455 F. App'x 986, 988 (Fed. Cir. 2012) ("To demonstrate Tucker Act jurisdiction, a plaintiff has the burden of identifying a constitutional provision, federal statute, executive agency regulation, or independent contractual relationship that provides a substantive right to money damages, that is, a money-mandating provision."); *Martin v. United States*, No. 22-1810, 2023 WL 1878576, at *2 (Fed. Cir. Feb. 10, 2023) ("A plaintiff cannot establish jurisdiction in the Court of Federal Claims through only vague, conclusory, or unsupported assertions."); *Kimbrell v. United States*, No. 17-495C, 2021 WL 1906254, at *5 (Fed. Cl. May 12, 2021) (finding that a plaintiff

---

compensation; rather, this provision merely permits such agreements. *See generally* Compl.  Even if the statute mandated payments to Indian tribes, it would only be money-mandating for the purpose of establishing jurisdiction in this Court to the extent that "the plaintiff is within the class of plaintiffs entitled to recover under the statute if the elements of a cause of action are established." *Greenlee Cnty.*, 487 F.3d at 876.  Plaintiff is an individual, not an Indian tribe, and so is not within the class of plaintiffs entitled to recover under the statute. *See Botello v. United States*, 173 Fed. Cl. 26, 37 (2024) (a statute is not money-mandating when it "does not contain any language mandating the payment of monies to individuals" who do not meet the requirements of the statute).  Further, as Plaintiff "simply mentions" the Indian Tribal Justice Support Act and "does not make any specific assertion that he is entitled to a claim for relief due to the government's violation" of the act, he has not "made a non-frivolous assertion that [he is] entitled to relief under the" act. *Wilder v. United States*, No. 07-723, 2007 WL 5173633, at *3 (Fed. Cl. Nov. 5, 2007) (quoting *Brodowy v. United States*, 482 F.3d 1370, 1375 (Fed. Cir. 2007)), *aff'd*, 277 F. App'x 999 (Fed. Cir. 2008).  Accordingly, this Court lacks jurisdiction over a claim by Plaintiff based in Section 3613.

failed to point to a money-mandating source of law when plaintiff merely cited to an act of Congress without providing a citation to a specific money-mandating provision). As Plaintiff has not done so here, none of the cited statutes or resolutions provide a basis for jurisdiction.[10]

### D. This Court Lacks Jurisdiction Over Plaintiff's Contract Claims.

While difficult to discern, the Court understands Plaintiff to set out a contract claim. Plaintiff claims that a United States Magistrate Judge "forced [him] into a unilateral contract, under guise of a 'federal indictment'" which appears to refer to the Magistrate Judge's request that Plaintiff enter a plea and the setting of Plaintiff's bail. Compl. ¶¶ 4, 15. This claim fails as the Court "lacks jurisdiction over claims that plaintiffs fail to plausibly allege a contract." *Doiban v. United States*, 173 Fed. Cl. 527, 549 (2024); *see Trauma Serv. Grp.*, 104 F.3d at 1325; *Starrett*, 2023 WL 152827, at *4. Here, Plaintiff has not alleged any elements of a contract with the Government. *See Suess v. United States*, 535 F.3d 1348, 1359 (Fed. Cir. 2008) ("The requirements for a contract between the United States and a private party are (1) mutuality of intent to contract, (2) consideration, (3) lack of ambiguity in offer and acceptance, and (4) authority on the part of

---

[10] Additionally, for the first time in his Response, Plaintiff requests that this Court "utilize its power" under the APA to compel the "lower court" to grant him habeas relief, hold that the involved agencies' actions were unlawful, release him from prison "and into the hands of his nation," and give him a certificate of innocence. Resp. at 4. This argument is waived as it was raised for the first time in his Response brief and Plaintiff did not move to amend his Complaint to include this argument. *Driessen v. United States*, 116 Fed. Cl. 33, 44 n.10 (2014) ("It is generally improper for a party to raise new claims not included in its complaint in an opposition to a motion to dismiss."); *see Pandrol USA, LP v. Airboss R'y Prods., Inc.*, 320 F.3d 1354, 1366–67 (Fed. Cir. 2003). Regardless, this Court lacks jurisdiction over claims seeking to overturn a criminal conviction, and also lacks the authority to grant habeas relief. *Joshua*, 17 F.3d at 379–80; *Rolle v. United States*, 752 F. App'x 1005, 1006 (Fed. Cir. 2018) (citing *Ledford v. United States*, 297 F.3d 1378, 1381 (Fed. Cir. 2002)) (stating that the Court of Federal Claims has not been given the authority to hear cases under the habeas statute). Further, this Court is unable to grant the relief Plaintiff requests because "[t]he only judgments which the Court of Claims is authorized to render against the government are judgments for money found due from the government to the petitioner," and thus such claims must be dismissed pursuant to Rule 12(b)(1). *King*, 395 U.S. at 3.

18

the government agent entering the contract."). Indeed, Plaintiff expressly disclaims "mutuality of intent to contract," as he states that he was forced into a unilateral contract and that he refused "to consent (by not entering a plea)." Compl. ¶¶ 4, 15. Moreover, even assuming Plaintiff alleged the elements of a contract, in the context of an "agreement reached in a criminal case," this Court's jurisdiction extends only to situations in which the Government has made an "unmistakable promise to subject the United States to monetary liability." *Sanders*, 252 F.3d at 1336. Plaintiff, however, does not attempt to identify *any* such promise—let alone an "unmistakable" one. Compl. ¶¶ 4, 15. Accordingly, because Plaintiff fails to allege either the essential elements of a contract or an unmistakable promise of monetary liability by the Government, this Court lacks jurisdiction over Plaintiff's contract claim.[11]

### E.    This Court Lacks Jurisdiction Over Plaintiff's Breach of Trust Claim.

For the first time in his Response,[12] Plaintiff makes a claim for "breach of trust in mutually agreed Treaties." Resp. at 1–3. Plaintiff claims to be a "Cherokee National" and a member of the

---

[11] Additionally, Plaintiff raises a second contract-based claim for the first time in his Response, where he alleges that the "fair warning and fee schedule" in his Notice is a "common law contract" to which Defendant purportedly agreed "by acquiescence" when Defendant failed to respond. Resp. at 3; *see also* ECF No. 11-2 at 28 ("Fair Warning and fee schedule"). This argument is waived as it was raised for the first time in his Response brief and Plaintiff did not move to amend his Complaint to include this argument. *Driessen*, 116 Fed. Cl. at 44 n.10; *see Pandrol*, 320 F.3d at 1366–67. Even if not waived, the Court lacks jurisdiction over the claim. A core principle of contract law is that "[s]ilence may not be construed as an acceptance of an offer absent special circumstances existing prior to the submission of the offer." *Radioptics v. United States*, 621 F.2d 1113, 1121 (Ct. Cl. 1980) (citing 1 Williston on Contracts, § 91 (3d ed. 1957)). Indeed, "[c]ontract law does not permit one to send unsolicited letters to the government (or anyone else) declaring that a failure to respond to the letter constitutes both formation and breach of a contract, entitling the sender to liquidated damages." *Ibrahim v. United States*, 799 F. App'x 865, 868 (Fed. Cir. 2020) (affirming dismissal of a similar silence-as-acceptance claim for lack of subject matter jurisdiction). As Plaintiff's claims are entirely based on such a "wholly insubstantial and frivolous" argument this Court lacks jurisdiction over it. *Id.* at 867–68 (quoting *Lewis v. United States*, 70 F.3d 597, 602–04 (Fed. Cir. 1995)).

[12] When recounting his breach of trust argument in his Response, Plaintiff states that he "move[s] to amend count one, to 'breach of trust in mutually agreed Treaties,' which also covers counts two

"non-B.I.A. Tsalagi Goldfalcon Thunderbird Clan" of the Autochthon Kingdom and alleges the Government breached various treaty and statutory obligations to Plaintiff.  Compl. at 1; Resp. at 2–3, 5.  For the reasons explained below, Plaintiff's claims for breach of trust fail.[13]

In evaluating whether the Court has jurisdiction over a breach of trust claim stemming from breach of duties to Indians, a two-part test is applied.  *Fletcher v. United States*, 26 F.4th 1314, 1324–25 (Fed. Cir. 2022).  "Under prong one, the plaintiff must persuade the [c]ourt that the source of law on which the claim is based imposes 'specific fiduciary or other duties' on the government." *Birdbear v. United States*, 162 Fed. Cl. 225, 232 (2022) (quoting *United States v. Navajo Nation,* 537 U.S. 488, 506 (2003)).  In the second step, a court must determine whether that substantive source of law "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained."  *Id.* (quoting *Mitchell II*, 463 U.S. at 218).  Consistent with this requirement, the source of law "must also be reasonably amenable to the reading that the plaintiff is 'within the class of plaintiffs entitled to recover under the statute if the elements of a cause of action are established.'"  *Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1307 (Fed. Cir. 2008) (quoting *Greenlee Cnty., Ariz. v. United States*, 487 F.3d 871, 876 (Fed. Cir. 2007)).

---

and three."  Resp. at 3.  While Rule 15(a)(2) requires parties to file a motion to amend their complaint, the Court nevertheless considers Plaintiff's breach of trust claim in light of Plaintiff's *pro se* status.  *See Erickson,* 551 U.S. at 94.

[13] The Court lacks jurisdiction to hear Plaintiff's argument to the extent he alleges that the Government breached these various treaties and statutes by allegedly convicting Plaintiff without the appropriate jurisdiction to do so.  Resp. at 2–3; *see also* Compl. Mem. 5–8 (arguing that he was not subject to the District Court's jurisdiction for his criminal proceedings).  As explained above, these are arguments for his criminal case and any associated appellate process.  *See supra* § I.  This Court may not hear a collateral attack on Plaintiff's criminal conviction.  *Id.*

Plaintiff principally relies on two treaties as the source of the Government's duties—the Treaty with the Delawares and the Treaty with the Comanche.[14]  Resp. at 1–3.  As explained below, this Court lacks jurisdiction over Plaintiff's breach of trust claim based on either treaty.[15]

---

[14] Plaintiff also lists several statutory sources that allegedly impose a trust obligation on the United States but does not attempt to identify any specific money-mandating provision.  Resp. at 2–3.  First, Plaintiff cites 25 U.S.C. § 3601.  *Id.* at 2.  Section 3601 is the findings section of the Indian Tribal Justice Support Act of 1993, to which Plaintiff referenced in his Complaint.  Compl. ¶ 15; 25 U.S.C. § 3601.  This specific section is not money-mandating, as it merely lists the formal findings Congress made regarding circumstances that prompted the legislation.  25 U.S.C. § 3601; *see LeBlanc*, 50 F.3d at 1028 (citing *Testan*, 424 U.S. at 398) (noting that, to invoke the Tucker Act, a source of law must "expressly create[] a substantive right enforceable against the federal government for money damages").  Next, Plaintiff cites several statutes he simply labeled as "Indians §," which this Court interprets as referencing Title 25 of the United States Code, entitled "Indians."  *See* Resp. at 2–3 (citing "Indians" Sections 3, 9, 14, 15, 17, 19, 21, and 26).  Citing to chapters of the United States Code, which spans hundreds of more specific sections, cannot fulfil the requirement for Plaintiff to "demonstrate that the source of substantive law he relies upon 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.'"  *Mitchell II*, 463 U.S. at 216–17 (quoting *Testan*, 424 U.S. at 400).  Finally, Plaintiff cites 18 U.S.C. § 1151(c), a criminal statute that defines the term "Indian country" and makes no reference to any trust obligation nor contains a money-mandating provision.  18 U.S.C. § 1151(c); Resp. at 2.  Accordingly, none of these statutes vest this court with jurisdiction.

Additionally, in his Complaint, Plaintiff claims that the Government acted contrary to "the Cherokee Treaties of 1791, 1846, [and] 1866."  Compl. ¶ 15.  It is unclear if Plaintiff attempts to bring a breach of trust claim based on those treaties, as Plaintiff merely lists these treaties without more.  *Id.*  To the extent Plaintiff seeks to bring a claim based on these treaties, he cannot do so, as Plaintiff does not and cannot identify any money-mandating provision within those treaties.  *See Greene v. United States,* 100 F.4th 1364, 1367–68 (Fed. Cir. 2024) (affirming that when a plaintiff seeks to bring a claim based on an Indian treaty in this Court "the plaintiff must demonstrate that the [treaty] contains *provisions* that can reasonably be inferred to mandate compensation by the United States") (emphasis added); *see also Price v. United States*, 123 Fed. Cl. 560, 563 (2015) (holding that plaintiff's "vague references to violations of constitutional provisions, statutes, and regulations" were insufficient to identify a money-mandating source); *Kimbrell*, 2021 WL 1906254, at *5 (finding that plaintiff failed to point to a money-mandating source of law when plaintiff merely cited to an act of Congress without providing a citation to a specific money-mandating provision); *Visconi*, 455 F. App'x at 988 ("To demonstrate Tucker Act jurisdiction, a plaintiff has the burden of identifying a constitutional provision, federal statute, executive agency regulation, or independent contractual relationship that provides a substantive right to money damages, that is, a money-mandating provision.").  Further, nothing in the cited treaties creates "contract-based rights in individuals, the breach of which could give rise to monetary remedies for those individual complainants."  *Greene*, 100 F.4th at 1370; *see also Edwards*, 2015 WL 6560547,

### 1.    Treaty with the Delawares

Plaintiff cites Articles IV and VI of the Treaty with the Delawares.  Resp. at 1.  As Plaintiff states, Article IV provides that "all proceedings involving a member of the Delaware Peoples . . . will be according to natural law only, with judges and juries of both sides present."  *Id.* (citing Treaty with the Delawares, Art. IV).  In addition to the provision Plaintiff cites, Article IV states that none of the parties would "protect in their respective states, criminal fugitives, servants, or slaves."  Treaty with the Delawares, Art. IV.  As for Article VI, Plaintiff states that it "guarantees that territorial rights are guaranteed to the Delaware People and their heirs."  Resp. at 1 (citing Treaty with the Delawares, Art. VI).  Article VI also allows the parties, if they find it mutually beneficial, to invite other tribes "to join the present confederation, and to form a state whereof the Delaware nation shall be the head."  Treaty with the Delawares, Art. VI.  Neither provision provides a basis to invoke this Court's jurisdiction as they do not contain "language that would raise the 'fair inference' that the Government should be liable for money damages for failure to carry out those duties."  *Greene*, 2023 WL 3072565, at *5 (quoting *White Mountain*, 537 U.S. at 475).  Accordingly, the identified treaty provisions cannot support jurisdiction in this Court.

---

at *3 (holding that the 1886 Treaty with the Cherokee does not contain money-mandating provisions).

[15] Plaintiff suggests in his Response that the Government breached its contractual obligations under these treaties.  Resp. at 2–3.  Treaties with Indian nations fall into a "category[y] of contracts that require the plaintiff to identify money-mandating provisions in the treaty."  *Greene v. United States*, 22-1064, 2023 WL 3072565, at *2 (Fed. Cl. Apr. 25, 2023), *aff'd*, 100 F.4th 1364 (Fed. Cir. 2024); *see Jarvis v. United States*, No. 22-1006, 2022 WL 1009728, at *2 (Fed. Cir. Apr. 5, 2022) (dismissing claim for violation of an Indian treaty where plaintiff failed to identify a money-mandating provision in treaty).  Accordingly, any breach of contract theory grounded in such treaties is subject to the same jurisdictional limitations as the breach of trust claim addressed in this section and fails for the same reasons.

2.      **Treaty with the Comanche**

Plaintiff cites Articles III and VII of the Treaty with the Comanche.  Resp. at 3.  However,

neither provision is money-mandating and, accordingly, these provisions cannot supply this Court

with jurisdiction over Plaintiff's claim.[16]

The first provision, Article VII, states:

> Should any difficulty hereafter unfortunately arise between any of the nations or
> tribes of Indians parties hereunto, in consequence of murder, the stealing of horses,
> cattle, or other cause, it is agreed that the other tribes shall interpose their good
> offices to remove such difficulties, and also that the Government of the United
> States may take such measures as they may deem proper to effect the same object,
> and see that full justice is done to the injured party.

Treaty with the Comanche, Art. VII.  This provision merely contains a promise by the United States

that it may help mediate disputes between Indian tribes.  As this provision does not contain

"language that would raise the 'fair inference' that the Government should be liable for money

damages for failure to carry out those duties," it cannot support jurisdiction in this Court.  *Greene*,

2023 WL 3072565, at *5 (quoting *White Mountain*, 537 U.S. at 475).

The next provision Plaintiff cites, Article III, states in relevant part that

> [T]he United States hereby guaranty to any Indian or Indians of either of the said
> Comanche or Witchetaw nations, and their associated bands or tribes of Indians, a
> full indemnification for any horses or other property which may be stolen from
> them: *Provided*, that the property so stolen cannot be recovered, and that sufficient
> proof is produced that it was actually stolen by a citizen of the United States, and
> within the limits thereof.

Treaty with the Comanche, Art. III (emphasis in original) (Indemnification Provision).  Although

the language "guarant[eeing] . . . full indemnification" for property stolen by citizens of the United

States may initially seem to be money-mandating in nature, upon further examination, such

---

[16] While another judge of this Court previously found that the Treaty with the Comanche does not
"contain[] any provision that contemplates an award of money damages for its breach," *Edwards*,
2015 WL 6560547, at *3, the opinion did not analyze any specific provisions of the Treaty.  *Id.*

language does not constitute a money-mandating provision sufficient to confer jurisdiction over Plaintiff's claims.

To establish jurisdiction in this Court, a plaintiff must identify a money-mandating source of law that is "reasonably amenable to the reading that the plaintiff is 'within the class of plaintiffs entitled to recover under the [source of law] if the elements of a cause of action are established.'" *Jan's Helicopter Serv.*, 525 F.3d at 1307 (quoting *Greenlee Cnty.*, 487 F.3d at 876). "[T]his requirement is satisfied when a plaintiff makes 'a non-frivolous assertion that [plaintiffs] are entitled to relief under the statute.'" *Id.* at 1307 n. 8 (quoting *Brodowy*, 482 F.3d at 1375)). Courts have dismissed claims for lack of jurisdiction where plaintiffs fell outside the class of those authorized to recover under the asserted money-mandating provision. For example, in *Garner v. United States*, the court held that a civilian employee could not invoke a statute whose payment provision applied only to uniformed members of the armed services. No. 24-795, 2025 WL 262601, at *4 (Fed. Cl. Jan. 22, 2025), *appeal docketed*, No. 25-1398 (Fed. Cir. Jan. 29, 2025). Likewise, in *Saguaro Chevrolet, Inc. v. United States*, the court dismissed a contract claim because the plaintiff lacked privity of contract with the United States and was therefore not within the class of parties entitled to recover. 77 Fed. Cl. 572, 576–77 (2007).

Plaintiff does not fall within the class of plaintiffs entitled to recover under the asserted Indemnification Provision. Plaintiff alleges that he is a "Cherokee National."[17] Compl. at 1.

---

[17] Even though Plaintiff alleges he is a "Cherokee National," it is not clear that Plaintiff is, in fact, a Cherokee. Compl. at 1. There are three Cherokee tribal entities that are federally recognized. *See* 89 Fed. Reg. 944 (Jan. 8, 2024) (list of 574 Tribal entities recognized by the Bureau of Indian Affairs). The Delaware Tsalagi Goldfalcon Thunderbird Clan (Thunderbird Clan) and the Autochthon Kingdom are not among them. *Id.* Instead, it appears that the Thunderbird Clan may be a type of sovereign citizen organization. *See* ECF No. 1-3 at 118–37 (Plaintiff's exhibit of a Thunderbird Clan document, which lists various sovereign citizen theories, including that the United States is corporation, that the members of the Thunderbird Clan are not United States citizens, and explaining that the members do not drive, but rather "'convey' from place to place");

While the Cherokee were a party to the treaty, the Indemnification Provision only concerns the "Comanche or Witchetaw nations, and their associated bands or tribes of Indians," not the Cherokee.[18]  Treaty with the Comanche, Art. III.

"The interpretation of a treaty, like the interpretation of a statute, begins with its text." *Medellin v. Texas*, 552 U.S. 491, 506 (2008).  The relevant portion of the text states, "the United States hereby guaranty to any Indian or Indians of either of the said Comanche or Witchetaw nations, and their associated bands or tribes of Indians, a full indemnification for any horses or other property which may be stolen from them . . . ."  Treaty with the Comanche, Art. III.  This language is unambiguous.  The Indemnification Provision applies solely to members of the Comanche and Witchetaw nations and their associated bands or tribes; it does not extend to members of the other tribal nations named elsewhere in the treaty.  *Id.*  As the Federal Circuit has emphasized, although Indian treaties must be construed liberally in favor of the tribes, courts "must honor any unambiguous language in the treaty."  *Jones*, 846 F.3d at 1351–52.  The Court does so here.

---

*see supra*, note 4 (outlining common sovereign citizen theories); *see also* Resp. at 2 (seemingly suggesting that Plaintiff became a "bloodright heir to the Delaware Treaty of 1778" only by "succession through the United Nations," which purportedly occurred in 2024).  Further, Plaintiff alleges that his nation is "the Autochthon Kingdom," and other courts have found that claiming to be associated with an "Autochthon" tribe is a hallmark of a sovereign citizen.  Resp. at 2; *see, e.g.*, *Leotie v. Bayview Loan Servicing LLC*, No. 18-4017, 2019 WL 1225178, at *2 (N.D. Ga. Jan. 18, 2019), *R. & R. adopted*, 2019 WL 1219350 (N.D. Ga. Feb. 7, 2019); *Cruel-El v. South Carolina*, No. 18-1680, 2018 WL 3628844, at *3 (D.S.C. July 10, 2018), *R. & R. adopted*, 2018 WL 3619798 (D.S.C. July 30, 2018), *aff'd*, 744 F. App'x 185 (4th Cir. 2018).

[18] The Cherokee are not among the "associated bands or tribes" of the Comanche or Witchetaw.  Treaty with the Comanche, Art. III.  The treaty's preamble and Article I distinguish three separate contracting parties: (i) the United States, (ii) "the Comanche and Witchetaw nations and their associated bands or tribes of Indians" and (iii) "the Cherokee, Muscogee, Choctaw, Osage, Seneca and Quapaw nations."  *Id.*, Art. I.  By distinguishing the Cherokee from the Comanche and Witchetaw's affiliates, the text of the treaty confirms that whoever may be "associated" with the Comanche and Witchetaw, the Cherokee are not among them.

Moreover, the broader structure and other provisions of the treaty reinforce the conclusion compelled by the unambiguous text of the provision at issue.  *See Water Splash, Inc. v. Menon*, 581 U.S. 271, 276–79 (2017) (analyzing "[t]he text and structure" of the Hague Service Convention when interpreting a specific provision).  As set forth in the preamble and Article I of the Treaty with the Comanche, the treaty was concluded among three distinct groups: (i) the United States, (ii) "the Comanche and Witchetaw nations and their associated bands or tribes of Indians" and (iii) "the Cherokee, Muscogee, Choctaw, Osage, Seneca and Quapaw nations."  Treaty with the Comanche, Art. I.  This structure is reflected throughout the treaty, the majority of which governs the relationship between the United States and the Comanche and Witchetaw, while only select provisions extend to the other tribes.  *Compare id.*, Art. IV ("It is understood and agreed by all the nations or tribes of Indians parties to this treaty . . . ."), *with id.*, Art. V ("The Comanche and Witchetaw nations and their associated bands or tribes of Indians, severally agree and bind themselves . . . .").  Article III conforms to this same structure, identifying certain provisions— such as the Indemnification Provision—that apply exclusively to the United States and the Comanche and Witchetaw.  *See id.*, Art. III.  Thus, when the treaty is read as a whole, it confirms the plain meaning of the Indemnification Provision: it obligates the United States to indemnify members of the Comanche and Witchetaw nations but imposes no such obligation with respect to members of the Cherokee Nation.  *See id.* ("[T]he United States hereby guaranty to any Indian or Indians of either *of the said Comanche or Witchetaw nations*, and their associated bands or tribes of Indians, a full indemnification for any horses or other property which may be stolen from them . . . .") (emphasis added).

The Indemnification Provision by its plain terms, applies only to members of the Comanche and Witchetaw nations.  *Id.*  Plaintiff, who identifies himself as a "Cherokee National,"

does not—and cannot—claim membership in the Comanche and Witchetaw nations.  Compl. at 1.

He thus fails to make "a nonfrivolous assertion that [he] is within the class of plaintiffs entitled to

recover under" the Indemnification Provision.  *Jan's Helicopter Serv.*, 525 F.3d at 1307.

Accordingly, this Court lacks jurisdiction to hear a claim brought by Plaintiff pursuant to the

Indemnification Provision in Article III of the Treaty with the Comanche.[19]  *See id.*

## III.    Plaintiff's Fifth Amendment Takings Claim Fails to State a Claim for Which Relief Can Be Granted.

Plaintiff also alleges that ATF agents "took and carried away" his weapons and phone

"without just compensation" in violation of the Fifth Amendment.  Comp. ¶¶ 2, 18.  However, the

seizure and retention of property in the course of a criminal investigation is not a taking under the

Fifth Amendment as "[p]roperty seized and retained pursuant to the police power is not taken for

'public use' in the context of the Takings Clause."  *AmeriSource Corp. v. United States*, 525 F.3d

1149, 1153 (Fed. Cir. 2008); *see also Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1331–32

(Fed. Cir. 2006) ("When property has been seized pursuant to the criminal laws . . . , such

deprivations are not 'takings' for which the owner is entitled to compensation."); *Paalan v. United*

*States*, 120 F. App'x 817, 822–23 (Fed. Cir. 2005) ("[N]either the seizure of items of evidentiary

---

[19] Even assuming *arguendo* this Court had jurisdiction, Plaintiff's breach of trust claim also fails to state a claim upon which relief can be granted, and therefore the Court alternatively dismisses under Rule 12(b)(6).  As discussed above, the Indemnification Provision applies exclusively to members of the Comanche and Witchetaw nations—an affiliation that Plaintiff, a self-identified "Cherokee National," nowhere alleges.  Compl. at 1.  Consequently, he cannot "come within the reach" of the Indemnification Provision and thus fails to state a claim upon which relief may be granted.  *In re United States*, 463 F.3d 1328, 1335 (Fed. Cir. 2006) (dismissing complaint where "it is clear from the face of his complaint that [plaintiff] does not come within the reach of [the money-mandating source of law]"); *see Jan's Helicopter Serv.*, 525 F.3d at 1307 (holding that a plaintiff whose case "does not fit within the scope of [a money-mandating source of law] . . . , loses on the merits for failing to state a claim" (quoting *Fisher*, 402 F.3d at 1175–76)); *Doe v. United States*, 463 F.3d 1314, 1325 (Fed. Cir. 2006) (affirming dismissal where an otherwise money-mandating source "does not require payment" to the plaintiff).  Accordingly, the Court alternatively dismisses this claim under Rule 12(b)(6).

value nor the retention of personal property that [plaintiff] was not allowed to retain during his incarceration constituted takings for which the government was required to pay just compensation."). Here, Plaintiff's weapons and phone were seized pursuant to the criminal investigation that resulted in his conviction for dealing firearms without a license and making false statements to a federally licensed firearms dealer.[20] Comp. ¶¶ 2, 18, 20. Accordingly, Plaintiff's claim under the Takings Clause must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

## CONCLUSION

For the foregoing reasons, this Court **GRANTS** Defendant's Motion to Dismiss (ECF No. 8) pursuant to Rules 12(b)(1), Rule 12(h)(3), and 12(b)(6). Accordingly, Plaintiff's Complaint is **DISMISSED** without leave to be replead. Plaintiff's Motion for Summary Judgment (ECF No. 10) is **DENIED** as **MOOT**. The Clerk of Court is **DIRECTED** to enter Judgment accordingly. This Court certifies that, pursuant to 28 U.S.C. § 1915(a)(3), any appeal taken from this Order would not be in good faith, and therefore *in forma pauperis* status is denied for purposes of an appeal.

IT IS SO ORDERED.



*Eleni M. Roumel*
ELENI M. ROUMEL
Judge

---

[20] Plaintiff makes no mention whether his property was returned to him following the criminal investigation. *See generally* Compl. However, Plaintiff attached a "Notice of Seizure of Property and Initiation of Administrative Forfeiture Proceedings" to his Complaint, which lists the weapons seized and instructs Plaintiff on the appropriate manner to contest their forfeiture. ECF No. 1-3 at 1–3. To the extent Plaintiff's guns were forfeited and not returned to Plaintiff after the criminal investigation, Plaintiff is also unable to state a takings claim for such forfeiture, as "[t]here is . . . no takings liability when the government assumes ownership of property pursuant to valid and lawful forfeiture proceedings." *Jenkins v. United States*, 71 F.4th 1367, 1373–74 n.4 (Fed. Cir. 2023).